# IN THE COURT OF APPEALS OF IOWA

No. 24-1164
Filed September 4, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRANDON JOE LAUTENBACH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Mahaska County, Michael O. Carpenter, Judge.


        A defendant appeals his conviction for second-degree sexual abuse. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Gregory F. Greiner, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.


        Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

"If you don't fucking love me, I'll force you to fucking love me," yelled Brandon Lautenbach at his then-girlfriend, M.D., minutes before he sexually abused her. M.D. captured that statement and others on a cell phone recording that she made of the abuse, which was played for the jury at Lautenbach's trial for second-degree sexual abuse and domestic abuse assault. The jury found Lautenbach guilty of both crimes. On appeal, Lautenbach challenges the sufficiency of the evidence supporting his conviction for second-degree sexual abuse. We review this challenge for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023).

The jury was instructed that to find Lautenbach guilty of second-degree sexual abuse, the State had to prove:

> 1. On or about the 7th day of August, 2021, the defendant performed a sex act with [M.D.]
> 2. The defendant performed the sex act by force or against the will of [M.D.]
> 3. During the commission of sexual abuse, the defendant used or threatened to use force creating a substantial risk of death or serious injury to any person.

Lautenbach contests the third element, primarily based on his assertion that M.D. was an "unreliable and untrustworthy" witness. He contends that his denials of abuse deserve "significant credit" by comparison. These arguments fail under our standard of review, which is "highly deferential to the jury's verdict." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "It is not within the province of our court to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Brown*, 5 N.W.3d 611, 616 (Iowa 2024) (cleaned up).

The ultimate question is whether the evidence "supports the finding actually made, not whether the evidence would support a different finding." *Jones*, 967 N.W.2d at 339 (citation omitted). In answering that question, "we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

With that proper framework in mind, we turn to whether the State presented sufficient evidence that Lautenbach used or threatened to use force creating a substantial risk of death or serious injury during his commission of sexual abuse. M.D. told the jury that in 2021, she and Lautenbach were living in a trailer in Lanphier's Landing—a remote part of Mahaska County. Their years-long relationship, which was fueled by daily methamphetamine use, had become toxic. While Lautenbach was friendly and charismatic with others, he was verbally and physically abusive with M.D.:

> There was times where I would have my face smashed by his hand into wherever I was sitting, into the side of the car, into a couch. I have been elbowed in the face. I have had things thrown at me. I have been kicked in my ribs. I've been punched in my ribs, punched in the face, punched in the leg.

M.D. explained that over the course of their relationship, she had learned to sense when their arguments would turn violent. One of those arguments started on August 7, 2021. M.D. testified that it "was a rough day" because Lautenbach wanted to have sex with her, and she "just didn't want to." She described Lautenbach's requests as a "constant" barrage. As the day went on, M.D. could tell Lautenbach "was getting upset, and I hit record on my phone and threw it in

my purse because I just knew." The recording captured audio from parts of the abuse, which M.D. also described in her testimony.

The first twenty minutes of the recording are quiet. But then, Lautenbach can be heard yelling at M.D., "You want to push me, and push me, and fucking push me!" M.D. testified that while Lautenbach was yelling this at her, she was sitting quietly on the couch. Lautenbach was next to her and saying, "You wanna fuck me? You don't wanna fuck me? Huh? Huh? You wanna fuck me?" When M.D. stayed quiet, she testified that Lautenbach pushed her face into the side of the couch. While Lautenbach was doing that, the recording captured him yelling:

> Flinch from me. You stupid cocksucker. I want you to fuck me. That's what I want you to do. I want you to give a fuck and come in here and lay with me. Love me. It's not a lot to ask, is it? It's not a fucking lot to ask. Sit there and fucking shut down then.

Lautenbach went into the nearby bedroom, where he continued to shout, "Are you coming?" M.D. stayed on the couch, crying. She testified that Lautenbach came back out to the living room and grabbed her by the arm. He can be heard on the recording screaming: "Fucking get in here! I'll drag your ass in here so you fucking lay down next to me. Let's go! If you don't want to fucking love me, I'll force you to fucking love me."

Once they were in the bedroom, M.D. testified that she was "frozen and just stuck, like I was laying on the bed, like, stiff as a board staring out the window, like, scared." According to M.D., Lautenbach started asking, "'Don't you want me, don't you want me? Don't you love me?' And I'm like 'yes,' and he said, 'You're just saying that because you don't want beat up.' And he's like, 'Am I going to have to rape you?'" The recording captured some of these statements, although they were

quieter than the ones made while M.D. and Lautenbach were in the living room because M.D.'s cell phone was left behind when Lautenbach grabbed her arm. M.D. testified that Lautenbach moved his hand up her leg and pushed his fingers inside her vagina. At the same time, he put his hand on her throat, covered her mouth with his lips, and "shoved his tongue in [her] throat." He continued to strangle M.D. until she "could barely breathe at all" and "started to black out a little bit." M.D. testified that she thought Lautenbach was going to kill her. But then their friend, Brittney, knocked on the trailer door. Brittney testified that she had heard screaming coming from the trailer and M.D. saying, "Brandon, get off me."

M.D. testified that she tried to open the door, but Lautenbach grabbed her from behind and pulled her back to the bed, telling her: "Don't you fucking open that door. Don't you fucking open it." Brittney kept knocking, and Lautenbach eventually opened the door. M.D. was standing behind him. Brittney testified that M.D.'s face was red, and it looked like she had been crying. She asked M.D. if she wanted to leave with her, but M.D. said no. Thinking the argument had been defused, Brittney left. Once she was gone, Lautenbach continued sexually assaulting M.D. Lautenbach fell asleep when he was done, and M.D. testified that she "stayed there and cried until [she] fell asleep." When M.D. reported the abuse to the police two days later, she had bruising on her neck, chest, and leg, which she testified was caused by Lautenbach.

At trial, Lautenbach denied sexually assaulting M.D., and he presented witnesses who testified that she was not trustworthy. He also tried to explain his statements on the audio recording, which he claimed was made before August 7, to mean that he was just looking for "affection" from M.D., not sex: "I'm questioning

. . . why do you not want to have affection? Why do you not want to kiss me?" And he suggested that M.D.'s bruises were from injecting methamphetamine. Lautenbach reprises the same arguments on appeal. But these disputed fact and credibility issues "were for the jury to resolve, and they did resolve them," adverse to Lautenbach. *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022).

Viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Lautenbach used force that created a substantial risk of death or serious injury to M.D. based on her testimony that he strangled her until she couldn't breathe. *See State v. Brown*, No. 16-1118, 2017 WL 2181568, at *4 (Iowa Ct. App. May 17, 2017) ("Compromising a victim's airway creates a substantial risk of death." (citation omitted)). That testimony alone was sufficient evidence of Lautenbach's guilt. *See Mathis*, 971 N.W.2d 518; *accord State v. Donahue*, 957 N.W.2d 1, 10–11 (Iowa 2021). While Lautenbach "flatly denied committing any of the alleged abuse," the jury was free to accept or reject his testimony. *Mathis*, 971 N.W.2d at 518. Because "[a]ppellate review of the jury's verdict is not the trial redux," *id.*, we affirm Lautenbach's conviction for second-degree sexual abuse.

**AFFIRMED.**